# Wanamaker's Trust Estate.

Argued December 5, 1940. Before SCHAFFER, C. J., MAXEY, DREW, STERN and PATTERSON, JJ.

*David J. Smyth,* with him *Gustave F. Straub* and *Marshall A. Coyne,* for appellant.

*Roland C. Heisler,* for appellee.

OPINION BY MR. CHIEF JUSTICE SCHAFFER, January 6, 1941:

In this proceeding Mary B. Warburton, who is the daughter of John Wanamaker, the creator of a trust under which she is a life beneficiary, seeks a surcharge against the trustee, Fidelity-Philadelphia Trust Company. The Orphans' Court refused to make the surcharge and Mrs. Warburton has appealed.

The present controversy grows out of our decision in *Warburton v. John Wanamaker Philadelphia,* 329 Pa. 5, 196 A. 506, and to some extent out of an earlier case, *Warburton v. Fidelity-Philadelphia Trust Company,* 317 Pa. 541, 177 A. 753.

These cases resulted from the endeavor of Mrs. Warburton to have paid to her the interest or dividends on 10,000 shares of the preferred stock of John Wanamaker Philadelphia, of the par value of $1,000,000, which is the corpus of the trust. Mrs. Warburton failed to establish her position in the earlier suit, but in the later one she was successful and obtained an award of $190,631.16.

The items of suggested surcharge are these: A credit claimed in the trustee's account for counsel fees paid by it for legal services in *Warburton v. Fidelity-Philadelphia Trust Co.,* supra, amounting to $3,000, and for costs in that suit amounting to $25.25; a credit claimed for like expenditures in *Warburton v. John Wanamaker Philadelphia,* supra, amounting to $504.20; a claim in the amount of $35,797.51, representing additional income taxes which Mrs. Warburton was compelled to meet, due to the award to her having been paid in a single year, instead of having been paid each year as

the payments accrued, the allegation being that the refusal of the trustee, on demand by her, to bring suit caused the payments to be lumped in a single year; and a claim for reimbursement to her by the trustee of $40,000, paid by her to her attorney, for his services in representing her in the litigation and for costs. The same principles govern all these items of attempted surcharge.

The basis for appellant's demand for surcharge is, that the trustee violated its duty of loyalty and good faith in administering the trust and was guilty of negligence in that, when called upon by her to begin suit against the John Wanamaker corporation, to compel it to pay her the yearly sums due to her as they annually accrued, the trustee refused to act. From our review of the case, we are unable to reach the conclusion that there was any disloyalty, bad faith or negligence on the part of the trustee. It was confronted by a most unusual situation as the opinion in *Warburton v. John Wanamaker Philadelphia,* will show. Without mentioning all the facts, it may be observed that we said, speaking of the stock certificate evidencing the 10,000 shares of preferred stock, "it is unlikely this certificate has its counterpart in any issue of stock ever made." Whether the annual payments which it carried with it were dividends, payable only when declared, or a yearly interest charge of six per cent, was a debatable question on which much could be and was strongly said on both sides. While the shares were denominated preferred, they had no voting power, and the holder had no control or suggestion in the management of the business of the corporation and in the event of dissolution, voluntary liquidation or sale of all the property and assets of the corporation, the payment of the preferred stock was deferred to payment of the common. Before payment of either, any indebtedness of the corporation would have to be discharged. Dividends on the common stock, as well as

the payments due on the preferred shares, had been passed. It was a question, if the payments to be made on the preferred stock were dividends, whether they were cumulative or not. Account must be taken of the fact that the trustee represented, not only the life tenant, but the remaindermen, that we were in the midst of the depression when the demand that suit be instituted was made, with the not unwarranted fear that the recovery of a large judgment against the corporation might bring disastrous results to all parties concerned, particularly to the remaindermen.

This being the situation, the trustee did the right, the sensible and the prudent thing, it consulted counsel, of recognized high standing at the Bar, who advised that, owing to the uncertainties of the legal problems involved and the precariousness of the business situation, suit should not be brought. The trustee was fully justified under the situation here existing in acting upon his advice not to bring suit, and is entitled to reimbursement for the fees paid. What was said in *Myers' Appeal,* 62 Pa. 104, 109, is of much pertinence in this controversy: "The questions which arose . . . were certainly not so clear that they [the executors] ought to be held unfaithful to their trust. . . . It would be a hard measure of justice to visit a trustee with such consequences for a mistake of judgment upon points in regard to which lawyers and judges might well differ in opinion." See also *During's Appeal,* 13 Pa. 224; *Neff's Appeal,* 57 Pa. 91; *Bradley's Appeal,* 89 Pa. 514; *Dempster's Est.,* 308 Pa. 153, 162 A. 447.

Under the circumstances here existing and under the foregoing sound legal principles, the trustee could not be personally surcharged with the counsel fees paid by appellant to her attorney in the litigation. For additional reasons, it cannot be surcharged with the excess income taxes she had to pay. Such a claim is too uncertain and speculative. Moreover, if the trustee had itself brought the suit and recovered, it is not at all cer-

tain that the litigation would not have run a course long enough to cause the sum recovered to have been paid at the time and in the amount it was.

The decree of the court below is affirmed at appellant's cost.

Mr. Justice LINN did not participate in the decision of this case.